UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOZEF GARAN, Plaintiff, -v- NEW YORK-PRESBYTERIAN HOSPITAL, Defendant. | 24-CV-06978 (JAV) OPINION AND ORDER |

JEANNETTE A. VARGAS, United States District Judge:

On August 7, 2024, Plaintiff Jozef Garan ("Garan" or "Plaintiff") commenced this action *pro se* against Defendant New York-Presbyterian Hospital ("NYPH" or "Defendant"). ECF No. 1-1 ("Complaint" or "Compl") at 2. Presently before the Court is Defendant's motion for summary judgment seeking dismissal of Plaintiff's action in its entirety. ECF No. 37. For the following reasons, Defendant's motion for summary judgment is **GRANTED**.

## BACKGROUND

### A. Factual Background

The following facts in this case are undisputed.[1]

[1] Local Civil Rule 56.1 requires a party moving for summary judgment to submit "a separate, short and concise statement" setting forth material facts as to which there is no genuine issue to be tried. Local Civ. R. 56.1(a). A party opposing summary judgment must respond with a "correspondingly numbered paragraph . . . responding to[] each numbered paragraph in the statement of the moving party" and, if needed, a statement of additional facts as to which a triable issue remains. Local Civ. R. 56.1(b). If the moving party seeks summary judgment against a *pro se* litigant, that party must provide the *pro se* litigant with notice of the requirements

NYPH is a medical center based in New York City and provides medical care to the residents of Westchester County. ECF No. 40 ("Salvatore Decl."), ¶ 5. On February 2, 2009, NYPH hired Garan as a Housekeeping Aide. *Id.*, ¶ 6; ECF No. 46 ("Pl. Decl.") at 2. In that role, he worked at the Lawrence Hospital in Bronxville, New York, Pl. Decl. at 1, and became a member of the 1199 SEIU United Health Care Workers East union ("Local 1199"), *id.* at 2; Salvatore Decl., ¶ 7.

During his employment with NYPH, Garan participated in the Employees' Retirement Plan of New York-Presbyterian / Lawrence Hospital (the "Plan"). Salvatore Decl., ¶¶ 9-10. The Plan is a retirement program that determines the rights and benefits of participants upon the participant's retirement based on their

---

of both Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1. Local Civ. R. 56.2. "Once provided with this notice, *pro se* litigants are not excused from satisfying their obligations under Local Civil Rule 56.1." *Moore v. Shahine*, No. 18-CV-463 (AT) (KNF), 2021 WL 827694, at *3 (S.D.N.Y. Mar. 4, 2021), *aff'd*, No. 21-711-CV, 2022 WL 2118945 (2d Cir. June 13, 2022) (summary order).

Plaintiff was notified of his summary judgment obligations when Defendant provided him with copies of both Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1. ECF No. 41. While Defendant submitted a Rule 56.1 statement of undisputed material facts in support of its motion for summary judgment, ECF No. 39 ("Defendant's Rule 56.1 Statement"), Plaintiff failed to submit a correspondingly numbered Rule 56.1 statement controverting Defendant's Rule 56.1 Statement. Instead, Plaintiff submitted a filing that is labeled on the docket as a "Response," but its contents are styled like that of a declaration. *See generally* Pl. Decl.

"Courts in this Circuit typically forgive a *pro se* plaintiff's failure to file a Local Rule 56.1 statement, and generally conduct their own independent review of the record." *Moore*, 2021 WL 827694, at *4. Accordingly, the Court "construes Plaintiff's opposing [declaration] as [his] statement of facts required by Local Civil Rule 56.1." *Id.* To the extent Plaintiff's declaration fails to dispute the factual assertions in Defendant's Rule 56.1 Statement, the Court deems those assertions admitted for the purposes deciding the present motion. *See* Local Civ. R. 56.1(c).

rate of pay and years of service. *See generally* ECF No. 40-5 (setting out the terms of the Plan). Under the Plan's terms, the Retirement Board and its delegates have "total and complete discretionary authority to administer and interpret the Plan; including . . . the discretion to . . . decide all questions relating to an individual's eligibility to participate in the Plan and/or eligibility for benefits and the amounts thereof." *Id.* at 57.

The Plan also contains administrative procedures to address disputes regarding pension benefits. *Id.* at 79-83. In connection with such disputes, participants, beneficiaries, or their duly authorized representatives may submit a written claim to the Retirement Board no earlier than 180 days prior to the earliest date upon which such benefit would be payable under the Plan. *Id.* at 79. If the Retirement Board wholly or partially denies the claim, the Plan requires that the claimant is furnished with written notice specifying, *inter alia*, the reason or reasons for the denial, the specific Plan provisions on which the denial is based, and a description of any additional material needed to approve the denied claim along with an explanation as to why such material is needed. *Id.* at 80. The Plan further provides an appeal process for reviewing claims that the Retirement Board previously denied. *See id.* at 80-83.

As of January 1, 2020, pursuant to an agreement between NYPH and Local 1199, all NYPH employees who were members of Local 1199 were moved out of the Plan and enrolled in the 1199 SEIU Health Care Employees Pensions Fund (the "Union Fund"). Salvatore Decl., ¶ 11; *see* ECF No. 40-4 at 1. As a result, members

of Local 1199 that had been participating in the Plan, including Garan, had their benefit accruals under the Plan frozen as of December 31, 2019. Salvatore Decl., ¶ 13; *see* ECF No. 40-4 at 1. After the switch, Garan remained eligible to receive his accrued but frozen benefits from the Plan upon his retirement, ECF No. 40-4 at 1, and began accruing benefits through the Union Fund, *see* ECF No. 40-9.

In November 2019, NYPH notified Garan of these changes to his retirement program. ECF No. 46 at 4; *see* ECF No. 40-4 at 1. In April 2021, NYPH also informed Garan that his monthly benefit under the Plan would be $627.91 if he elected the Straight Life Annuity Option. ECF No. 40-1 at 2-3.

Garan retired on or about August 7 or August 8, 2021. Salvatore Decl., ¶ 21; ECF No. 40-1 at 3; Pl. Decl. at 2. Before his retirement, he elected to receive his monthly benefit under the Plan via the Straight Life Annuity Option. ECF No. 40-1 at 8. Garan's September 13, 2021, Final Statement of Benefits provides that, pursuant to the terms of the Plan and his elections and employment data, he is entitled to a monthly retirement benefit of $627.91 for his lifetime starting September 1, 2021. Salvatore Decl., ¶ 22; ECF No. 40-10 at 3. Garan has received a monthly retirement benefit of $627.91 since September 1, 2021. Salvatore Decl., ¶ 24; *see* ECF No. 40-10 at 3.

Garan has not raised a dispute about his pension benefits through the administrative procedures provided under the Plan. Specifically, he has not made a request in writing to the Retirement Board seeking review of their initial retirement benefit determination or calculation. Salvatore Decl., ¶ 25; *see* ECF No.

46 at 7 ("By my history with the Hospital and their officials, pursuing available administrative remedies would have been futile.").

Garan has, however, contacted multiple organizations and met with several individuals about issues regarding the pension benefits he has received under the Plan and his employment generally. Regarding issues related to his pension benefits, Garan has contacted the Office of Senator Charles E. "Chuck" Schumer, the Office of the Attorney General of the State of New York Letitia James, the New York State Department of Labor, the United State Department of Labor, and the State of New York Executive Chamber. *See generally* ECF No. 28. Regarding issues related to his employment generally, Garan has met with an individual from Lawrence Hospital's human resources department; Lawrence Hospital's President, Vice President, and Housekeeping Director; a financial officer from Lawrence Hospital; Local 1199 representatives; and the Office of United States Representative Eliot Engel. *See* Pl. Decl. at 6-7. Although the exact scope of Garan's meetings with officials from Lawrence Hospital is unclear from his attestations, those meetings addressed a reduction of his salary, his employee ID number changing, missing or incorrect information on his employment record, and "the monthly payments and freeze." *See id.* at 6. Ultimately, Garan attests, "Each time I met with these people they said they could not give me copies of the documents or provide me with the information and explanations I sought." *Id.*

## B. Procedural Background

On August 7, 2024, Plaintiff commenced this action *pro se* against Defendant in the Supreme Court of the State of New York, County of New York. Compl. at 2. On September 16, 2024, Defendant removed the action to the United States District Court for the Southern District of New York. ECF No. 1 at 1. The action was originally assigned to Judge Arun Subramanian. *See* ECF No. 10 at 1.

Although Plaintiff's Complaint does not assert a particular cause of action, it does assert various grievances regarding the pension benefit he is receiving under the Plan and his previous employment generally. *See* Compl. at 3-5. Plaintiff alleges that Defendant incorrectly calculated his years of service, resulting in an improper pension benefit determination. *Id.* at 3. Plaintiff also alleges that he is missing three weeks of pay since he requested that his retirement start on August 8, 2021, but his first pension payment was not issued until September 1, 2021. *Id.* The Complaint also alludes to the reduction of Plaintiff's salary in 2013, the change of his employee ID number in 2018, and unaccounted sick days and vacation days on his paychecks in 2018. *Id.* at 4.

When considering Plaintiff's motion for remand to state court, ECF No. 9, Judge Subramanian construed Garan's action as one brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically 29 U.S.C. § 1132(a)(1)(B). ECF No. 10 at 1. Section 1132(a)(1)(B) provides, "A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to

clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B).

## LEGAL STANDARDS

A grant of summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (citation omitted).

The moving party has the burden of demonstrating "that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact . . . ."). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). "Where the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied." *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003) (cleaned up).

When determining whether a genuine and material factual dispute exists, the Court must view all "evidence in the light most favorable to the [non-moving party]." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (citation omitted). The Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citation omitted). Ultimately, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

However, "special solicitude should be afforded [*pro se*] litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Although "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (cleaned up), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them to raise the strongest arguments that they suggest," *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (cleaned up). Nonetheless, "a *pro se* party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Burnett v. Oce N. Am.*, No. 11-CV-6894 (ER), 2014 WL 4547037, at *4 (S.D.N.Y. Sept. 12, 2014) (cleaned up).

## DISCUSSION

It is well established in the Second Circuit that "[a] plaintiff must administratively exhaust all claims before bringing an ERISA action." *Liverpool v. N.Y.C. Dist. Council of Carpenters Pension Fund*, No. 17-CV-4272 (PKC), 2018 WL 2561025, at *2 (S.D.N.Y. June 4, 2018); *see also Cooper v. Int'l Bus. Machs.*, No. 24-CV-656 (VAB), 2025 WL 1275880, at *3 (D. Conn. May 2, 2025) ("A plaintiff must exhaust their administrative remedies before filing suit over an ERISA claim."). "More specifically, claimants must pursue all administrative remedies provided by their plan pursuant to statute, which includes carrier review in the event benefits are denied." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir. 2002); *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) ("[E}xhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy.").

Defendant has presented evidence that Plaintiff has not availed himself of the administrative procedures provided by the Plan to raise a dispute about his pension benefits to the Retirement Board. Salvatore Decl., ¶ 25. Plaintiff has not disputed this fact. Instead, Plaintiff states only that, based upon his "history with the Hospital and their officials, pursuing available administrative remedies would have been futile." Pl. Decl. at 7.

Yet nothing in the record suggests that pursuit of administrative remedies would have been futile such that Garan could be released from the requirement to exhaust administrative remedies. It is only where a plaintiff "makes a clear and

positive showing that pursuing available administrative remedies would be futile, and the purposes behind the requirement of exhaustion are no longer served, that a court will release the claimant from the requirement." *Murphy Med. Assocs., LLC v. 1199SEIU Nat'l Benefit Fund*, No. 24-1880-CV, 2025 WL 763392, at *1 (2d Cir. Mar. 11, 2025) (summary order) (cleaned up). Given this high threshold, "even a claim by a plaintiff that an initial review was inadequate or unreasonable is not enough to establish futility where an appeal would provide an 'opportunity to identify those errors and seek administrative correction." *MacLennan v. Provident Life & Acc. Ins. Co.*, 676 F. Supp. 2d 57, 66 (D. Conn. 2009) (citation omitted).

Here, Plaintiff has not even attempted to use the administrative procedures provided by the Plan to dispute his pension benefits. Nor does Plaintiff point to any materials in the record to substantiate the alleged futility of such an attempt, besides his attestations as to the many meetings he had with officials from the Lawrence Hospital, Local 1199 representatives, and the Office of United States Representative Eliot Engel. *See* Pl. Decl. at 6-7. But the fact that those individuals could not "provide [Plaintiff] with the information and explanations [he] sought" has no bearing on whether it would have been futile to dispute his pension benefits before the Retirement Board—the one entity he was required to present these issues to and that was most likely to have the information he sought from others. *Id.* at 6; *see* ECF No. 40-5 at 56-58, 79-83. "[Plaintiff] cannot point to a single salient fact that meets the very high standard required for a showing of futility. Hence, [he] cannot be excused from the requirement that [he] exhaust all available

administrative remedies." *Greifenberger v. Hartford Life Ins. Co.*, No. 03-CV-3238 (SAS), 2003 WL 22990093, at *5 (S.D.N.Y. Dec. 18, 2003), *aff'd*, 131 F. App'x 756 (2d Cir. 2005) (summary order).

**CONCLUSION**

Accordingly, Defendant's motion for summary judgment is **GRANTED**. The Clerk of Court is directed to close the case and terminate all pending motions. The Clerk of Court is further directed to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: July 24, 2026
New York, New York

JEANNETTE A. VARGAS
United States District Judge